IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| LIONEL SCOTT ELLISON, | CV 17-00045-H-DLC-JTJ |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| STATE OF MONTANA WARDENS, et al., | |
| Defendants. | |

Plaintiff Lionel Ellison filed a document entitled "Request for Emergency Temporary Restraining Order Due to Imminent Threat of Danger and Serious Harm" (Doc. 2), which has been liberally construed as a Complaint filed pursuant to 42 U.S.C. § 1983. Subsequently, he filed a "Supplemental Complaint to Add Additional Plaintiffs with Motion to Appoint Counsel" which has been construed as a motion for counsel and for leave to amend his complaint (Doc. 7) and a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 8).

Mr. Ellison's filings have been screened in accordance with 28 U.S.C. §§ 1915, 1915A, and the Court concludes that Mr. Ellison has sufficiently stated claims under the First Amendment and Sixth Amendment with regard to the handling of his legal mail and sufficiently stated a retaliation claim under the First

1

Amendment.  These claims will be served upon Defendants Bostwick, Daniels, and Ivie.  Mr. Ellison failed to state a denial of access to the courts claim or a due process claim.  As such, his allegations against Defendants Kirkegard, Fletcher, Salmonsen, Wilson, Wood, Beeson, Reich, Strutzel, Wendy Zuber, Captain Zuber, and John Does are insufficient to state a claim and will be recommended for dismissal.  The Court denies Mr. Ellison's motion to supplement the complaint to add additional plaintiffs and his motion to appoint counsel.  The Court recommends that Mr. Ellison's requests for injunctive relief as contained in his Complaint and in his motion for injunctive relief be denied.

## I.  STATEMENT OF THE CASE

### A.    Parties

Mr. Ellison is a state prisoner proceeding in forma pauperis and without counsel.  He is incarcerated at Montana State Prison ("MSP").

Mr. Ellison names the following Defendants:  State of Montana Wardens Leroy Kirkegard and Fletcher; Associate MSP Wardens Salmonsen, Wilson, Wood, and Beeson; Education Director Marissa Bostwick; Librarian Wendy Zuber; Grievance Officer Billie Reich; Disciplinary Officer Karla Ivie; Correctional Officers Captain Zuber and John Does; and Unit Managers Amy Daniels and Carla Strutzel.  (Complaint, Doc. 2 at 1-4.)

### B.  Factual Allegations

On December 5, 2016, a guard returned a manilla envelope to Mr. Ellison which he had attempted to mail to Robert Davis, an attorney from Austin, Texas, who had agreed to review evidence which allegedly proves Mr. Ellison's innocence.  The MSP mail room returned the package as not being legal mail.  Mr. Ellison states that he mailed this envelope to this attorney at his parents' address.  Mr. Ellison alleges that when his package was mailed, a guard inspected it, signed the package as legal mail, sealed the package, and put it in outgoing mail.  The package contained a draft petition for writ of habeas corpus, 42 exhibits, 20 plus pages of photographs, and a medical report.  Mr. Ellison alleges this documentation was missing from the package when it was returned to him. (Complaint, Doc. 2 at 4-5.)

On January 10, 2017, Mr. Ellison was called to the guard's cage to receive a package from his appointed attorney, Danny Tenenbaum.  The package was marked by Mr. Tenenbaum as the sender and Mr. Ellison as the receiver.  The package had been opened and ransacked.  Mr. Ellison showed the package to Unit Manager Amy Daniels, showing her that the package was ransacked and what was left in the package was coffee stained.  Defendant Daniels told Mr. Ellison that MSP employees can do as they pleased with his mail and it was not legal mail even

3

though it came from the Appellate Defenders' Office.  Mr. Ellison was told by Mr. Tenenbaum that the package contained exhibits, photos, and transcripts. (Complaint, Doc. 2 at 5-6.)

Mr. Ellison sent a grievance regarding this issue to Billie Reich which was ignored.  Mr. Tenenbaum called and spoke with Assistant Warden Salmonsen who said he would look into it.  (Complaint, Doc. 2 at 6.)

In January 2017, Mr. Ellison was working in the library and saw another inmate, Ingold, steal some items from the library.  He reported this to Education Director Bostwick who said she would handle the problem.  Two days later Mr. Ellison was "jumped" by Inmate Ingold who said that Ms. Bostwick had told him. This began many days of harassment and threats.  (Complaint, Doc. 2 at 7.)

On February 9, 2017, Mr. Ellison again observed Inmate Ingold stealing items from the library.  Mr. Ellison again told Ms. Bostwick about the alleged thefts.  (Complaint, Doc. 2 at 8.)

Mr. Ellison later became ill and could not go to work and was told that Ms. Bostwick said he quit because he could not come to work.  He sent an informal grievance on February 23, 2017 and wrote all the associate wardens.  He also sent a "kite" to Ms. Zuber alleging that his library privileges were suspended and he needed to get his legal case folder that was left in the library.  Ms. Bostwick

4

intercepted the kite and responded that Mr. Ellison was lying.  On March 13, 2017, Mr. Ellison filed a formal grievance against Ms. Bostwick for her alleged deliberate indifference to his safety and wrongful discharge.  (Complaint, Doc. 2 at 9.)

The following day an unknown guard stopped him and told him that Ms. Bostwick asked him to tell him, "no more grievances," or it will be "hole time," and that "people disappear in the hole."  Ms. Bostwick also wrote up Mr. Ellison with a major infraction on March 13, 2017, for lying on a kite about his legal folder and the suspension of his library privileges.  The write-up was dismissed on March 21, 2017.  (Complaint, Doc. 2 at 9.)

On April 4, 2017, Ms. Ivie called Mr. Ellison to her office and stated that Ms. Bostwick ordered that Mr. Ellison be recharged and found guilty.  Mr. Ellison was charged a third time with lying on April 4, 2017.  Associate Warden Beeson responded that they cannot redo write-ups for which Mr. Ellison had already been found innocent.  (Complaint, Doc. 2 at 10.)  Nevertheless, Defendant Strutzel, acting as a disciplinary officer, found Mr. Ellison guilty without looking at the evidence.  (Complaint, Doc. 2 at 10.)

Based upon these facts, Mr. Ellison alleges Defendants violated his First Amendment rights by removing vital documentation from his legal mail.  He

alleges Defendants Bostwick, Zuber, and Ivie's continued misuse of the prison disciplinary system by repeatedly recharging Mr. Ellison with the same act for which he was found innocent violates his due process rights under the Fifth and Fourteenth Amendments and violates the double jeopardy clause.  (Complaint, Doc. 2 at 12.)

He alleges Defendants Bostwick, Daniels, and Ivie are retaliating against him for using the prison grievance system by making false accusations, giving him unjust punishment, and by threatening him in violation of the First Amendment. He claims Defendant Strutzel did not allow him to present evidence of his innocence. Finally, he alleges Defendants Salmonson, Wilson, Wood, Beeson, Reich, Struzel, and all named correctional officers are violating his Eighth Amendment right against cruel and unusual punishment by failing to correct Defendant Bostwick's illegal actions and misuse of the prison grievance and disciplinary systems. (Complaint, Doc. 2 at 13.)

## II.  SCREENING PURSUANT TO 28 U.S.C. §§ 1915, 1915A

### A.  Standard

Mr. Ellison is a prisoner proceeding in forma pauperis so the Court must review his Complaint under 28 U.S.C. §§ 1915, 1915A.  Sections 1915A(b) and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis or

by a prisoner against a governmental defendant before it is served if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "A case is malicious if it was filed with the intention or desire to harm another."  *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005).  A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "that states a claim for relief must contain  . . .  a short and plain statement of the claim showing that the [plaintiff] is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  This rule requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

A complaint's allegations must cross "the line from conceivable to plausible."  *Iqbal*, 556 U.S. at 680.  There is a two-step procedure to determine whether a complaint's allegations cross that line.  *See Twombly*, 550 U.S. at 556;

7

*Iqbal*, 556 U.S. 662.  First, the Court must identify "the allegations in the complaint that are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679, 680.  Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability," or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim.  *Id.* at 679, 681.  A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability.  *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief.  *Iqbal*, 556 U.S. at 679.  A claim is "plausible" if the factual allegations, which are accepted as true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679 (citation omitted).  If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."  *Id.* (citing Fed.R.Civ.P. 8(a)(2)).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than

8

formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007);

*cf*. Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

### B.  Analysis

#### 1.  Legal Mail

Mr. Ellison first alleges that the MSP mailroom opened and removed vital

documentation from his legal mail.  The Supreme Court has recognized that

prisoners have protected First Amendment interests in both sending and receiving

mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78

(1987).  Prison regulations may curtail that right but only if the "regulations are

reasonably related to legitimate penological interests." *Witherow v. Paff*, 52 F.3d

264, 265 (9th Cir. 1995) (internal quotation marks omitted); *see also Thornburgh*,

490 U.S. at 413-19 (setting forth factors for evaluating claim regarding regulation

of incoming mail); *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974) (setting

forth factors for evaluating claim regarding regulation of outgoing mail), *overruled

on other grounds by Thornburgh*, 490 U.S. 401.  The United States Supreme Court

in *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974) held that prison officials may

open, but not read, incoming legal mail in the presence of the inmate.

Mr. Ellison's claims could also be construed as a Sixth Amendment claim

regarding his right to assistance of counsel.  It is well established that criminal

defendants have a Sixth Amendment right to assistance of counsel, and the right

applies in state court proceedings. *Gideon v. Wainwright*, 372 U.S. 335, 339–41

(1963).  The Ninth Circuit has made clear that the right to counsel is violated when

(1) "the government deliberately interferes with the confidential relationship

between a criminal defendant and defense counsel," and (2) the interference

"substantially prejudices the criminal defendant."  *Nordstrom v. Ryan*, 762 F.3d

903, 910 (9th Cir. 2014) (*Nordstrom I*).  The Ninth Circuit explained that a

defendant's "ability to communicate candidly and confidentially" with defense

counsel as "essential to his defense" and "nearly sacrosanct."  *Id*.  That is, prison

officials may not read an inmate's "outgoing attorney-client correspondence."  *Id.*

at 910–11.  Prison officials may "inspect[ ] an inmate's outgoing mail, in his

presence, to make sure that it does not contain, for example, a map of the prison

yard, the time of guards' shift changes, escape plans, or contraband."  *Id.* at 910.

Most recently however, the Ninth Circuit reiterated, that "prison officials

may inspect, but may not read, an inmate's outgoing legal mail in his presence."

*Nordstrom v. Ryan*, 2017 WL 2174547 (9th Cir. May 18, 2017).  The Ninth Circuit

specifically found that the practice of inspecting outgoing mail to ensure that it is

legal mail violated both the First and Sixth Amendments.

Mr. Ellison alleges that at least two pieces of legal correspondence between

10

himself and his attorneys have been opened and documents have been removed.

As such, Mr. Ellison has set forth sufficient facts to state both a First and a Sixth

Amendment claim against Defendant Daniels.  Defendant Daniels will be required

to file a response to Mr. Ellison's First and Sixth Amendment claims.

Mr. Ellison has not however, state a claim for denial of access to the courts.

To establish a violation of the right to access to the courts, prisoners must allege

facts sufficient to show that (1) a nonfrivolous legal attack on their conviction,

sentence, or conditions of confinement has been frustrated or impeded, and (2) they

have suffered an actual injury as a result.  *Lewis v. Casey*, 518 U.S. 343, 353–55

(1996).

Mr. Ellison has not presented any facts to suggest that he suffered an actual

injury with regard to a nonfrivolous legal action as a result of the loss/destruction

of his documents.  In fact, he alleges his attorney offered to replace these

documents.  Mr. Ellison has not sufficiently stated a denial of access to the courts

claim.

### 2.  Due Process

Mr. Ellison brings his due process claims under both the Fourteenth and the

Fifth Amendments.  The Fifth Amendment, however, applies only to the federal

government and is not applicable to Mr. Ellison's claims against state officials and

agencies. *Bingue v. Prunchak*, 512 F.3d 1169, 1175 (9th Cir. 2008). Mr. Ellison's due process claims will therefore be analyzed only under the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff*, 418 U.S. at 556. To state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a protected liberty interest and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 459–60 (1989).

Prisoners are entitled to due process protections when subject to disciplinary sanctions that implicate "a protected liberty interest–that is, where the conditions of confinement impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 987 (9th Cir. 2014) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In considering whether conditions impose an atypical and significant hardship, courts may consider the conditions of confinement, the duration of the sanction, and whether the sanction will affect the duration of the prisoner's sentence. *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003).

12

Mr. Ellison alleges he received multiple disciplinary write-ups for lying on grievances even though he had been found innocent of these infractions. These allegations are insufficient to establish a due process claim. Mr. Ellison does not describe his conditions of confinement before or after his disciplinary hearing and he does not explain what discipline he received. As such, the Court cannot determine if that discipline constituted an "atypical or significant hardship" sufficient to trigger a liberty interest. *Sandin*, 515 U.S. at 484. The Complaint contains no "factual content that allows the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that Defendants' actions "present[ed] a dramatic departure from the basic conditions of [Mr. Ellison's] indeterminate sentence," or caused him to suffer an "atypical" or "significant hardship." *Sandin*, 515 U.S. at 484-85; *see also Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998).

Generally, placement in disciplinary confinement, administrative segregation, solitary confinement, classification to a higher custody level, or transfer to a different facility does not place an atypical or significant hardship on an inmate sufficient to give rise to a protected liberty interest. *See Sandin,* 515 U.S. at 486 (placing an inmate in administrative segregation for thirty days "did not present the type of atypical, significant deprivation in which a state might

conceivably create a liberty interest."); *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (prisoners have no liberty interest in remaining free from administrative segregation or solitary confinement); *Toussaint v. McCarthy*, 801 F.2d 1080, 1091 (9th Cir. 1985) (administrative segregation is the type of confinement that can be reasonably anticipated by inmates at some point in their incarceration), *abrogated in part on other grounds by Sandin*, 515 U.S. 472; *see also Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007)(finding no "atypical and significant deprivation" where prisoner failed to allege conditions at level IV prison differed significantly from those at a level III prison); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (inmates do not have a liberty interest in their classification status); *Meachum v. Fano*, 427 U.S. 215, 223–27 (1976) (transfer of an inmate from one institution to another does not implicate a protected liberty interest).

Mr. Ellison's Complaint falls short of alleging conditions that have been found to be an atypical and significant hardship. *See Wilkinson v. Austin*, 545 U.S. 209, 223–24, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) (holding that prisoner was subject to an atypical and significant hardship by being given indefinite detention in a supermax prison where no conversation was permitted and lights were on for 24 hours a day); *Serrano v. Francis*, 345 F.3d 1071, 1078–79 (9th Cir. 2003) (holding that disabled prisoner placed in administrative segregation established an

14

atypical and significant hardship because prisoner was denied use of his wheel

chair for more than two months that created severe difficulty for prisoner to

practice hygiene and forced prisoner to drag himself across a vermin-infested

floor).

Mr. Ellison has not alleged the deprivation of a protected liberty interest,

therefore, his due process claims regarding his disciplinary write-ups fail to state a

claim and should be dismissed.  Accordingly, Mr. Ellison's allegations that

Defendants Salmonson, Wilson, Wood, Beeson, Reich, and Strutzel failed to

correct Ms. Bostwick's violations of his due process rights should also be

dismissed.

### 3.  Retaliation

To establish a claim for retaliation in violation of the First Amendment in

the prison context, a plaintiff must show (1) a prison official took adverse action

against him because of his protected conduct, (2) that action chilled his exercise of

his constitutional rights, and (3) the action did not advance a legitimate

correctional goal.  *Wood v. Beauclair*, 692 F.3d 1041, 1051 (9th Cir. 2012) (citing

*Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)).  The adverse action

need not be an independent constitutional violation.  *Pratt v. Rowland*, 65 F.3d

802, 806 (9th Cir. 1995).

The prisoner plaintiff must show that the type of activity in which he was engaged was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267–68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence). Retaliatory motive may be shown by the timing of the allegedly-retaliatory act and other circumstantial evidence, as well as direct evidence. *Bruce v. Ylst*, 351 F.3d 1283, 1288–89 (9th Cir. 2003). However, mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where there was no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

Mr. Ellison's allegations are sufficient to state a claim that Defendants Bostwick, Daniels, and Ivie retaliated against him for exercising his right to seek redress through the prison grievance system in violated of his First Amendment rights. Defendants Bostwick, Daniels, and Ivie will be required to respond to this claim.

### 4. Warden Kirkegard and Fletcher

Mr. Ellison sets forth no factual allegations against Wardens Kirkegard and Fletcher.  His only claim against them is that as Wardens they are legally responsible for the operation of Montana State Prison and for the welfare of the inmates at the prison.  (Complaint, Doc. 2 at 2.)  These allegations are insufficient to state a claim against these individuals.

Section 1983 imposes individual liability upon state actors only when their personal conduct violates a plaintiff's constitutional rights.  *Monell v. Department of Social Services*, 436 U.S. 658, 691-94 (1978).  This can be established in two ways.  First, an individual can be held liable for their own personal acts which directly cause an injury.  Yet, in order to make such a claim, a plaintiff must make specific factual allegations regarding what each defendant did or did not do.  Mr. Ellison does not make specific factual allegations regarding the actions of Wardens Kirkegard and Fletcher.  His only allegation is that they should be held liable as supervisors of the prison.

An individual can be held liable in their individual capacity under a theory of supervisory liability.  "[A] plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates."  *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). Supervising officers, however, cannot be held liable under a

17

respondeat superior theory under section 1983.  *Monell*, 436 U.S. at 691-94.  That

is, a defendant cannot be held liable just because they supervise other employees.

Instead, supervising officers can be held liable under § 1983 "only if they play an

affirmative part in the alleged deprivation of constitutional rights."  *King v. Atiyeh*,

814 F.2d 565, 568 (9th Cir. 1987).

A supervisor may be liable (1) for setting in motion a series of acts by

others, or knowingly refusing to terminate a series of acts by others, which they

knew or reasonably should have known would cause others to inflict constitutional

injury; (2) for culpable action or inaction in training, supervision, or control of

subordinates; (3) for acquiescence in the constitutional deprivation by

subordinates; or (4) for conduct that shows a reckless or callous indifference to the

rights of others.  *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).

Mr. Ellison's only allegations against Wardens Kirkegard and Fletcher are

that they are legally responsible for the prison.  Allegations such as these which

resemble "bald" and "conclusory" allegations should be dismissed.  *Hydrick v.*

*Hunter*, 669 F.3d 937 (9th Cir. 2012).  Mr. Ellison is attempting to hold Wardens

Kirkegard and Fletcher liable based a respondeat superior theory.  Allegations that

a supervisory defendant had personal knowledge of a constitutional violation are

insufficient without "specific allegations regarding each Defendant's purported

18

knowledge" of the violation. *Hydrick*, 669 F.3d at 942.  Mr. Ellison failed to allege

"sufficient facts to plausibly establish the [Kirkegard's and Fletcher's] 'knowledge

of' and 'acquiescence in' the unconstitutional conduct of [their] subordinates."

*Hydrick*, 669 F.3d at 942 (citing *Starr*, 652 F.3d at 1206–07).

Wardens Kirkegard and Fletcher should be dismissed.

## III.  MOTIONS FOR INJUNCTIVE RELIEF

As a general rule courts are unable to issue orders against individuals who

are not parties to a suit pending before it.  *Zenith Radio Corp. v. Hazeltine*

*Research, Inc.*, 395 U.S. 100 (1969); *Zepeda v. United States Immigration Service*,

753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it

has personal jurisdiction over the parties and subject matter jurisdiction over the

claim; it may not attempt to determine the rights of persons not before the court.").

Here, Defendants have not been served, they have not yet entered an appearance,

and have not yet responded to the Complaint.

More importantly, Mr. Ellison does not meet the standard for preliminary

injunctive relief.  "A preliminary injunction is an extraordinary remedy never

awarded as of right."  *Winter* v. *Natural Resources Defense Council, Inc.,* 555 U.S.

7, 24 (2008) (citations omitted).  It serves not as a preliminary adjudication on the

merits, but as a tool to preserve the status quo and prevent irreparable loss of rights

before judgment. *Textile Unlimited, Inc.* v. *A.. BMH & Co., Inc.,* 240 F.3d 781, 786 (9th Cir. 2001). In reviewing a motion for preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citations and internal quotation marks omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted).

*Winter* does not expressly prohibit use of a "sliding scale approach to preliminary injunctions" whereby "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies* v. *Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011). The Ninth Circuit recognizes one such "approach under which a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor." *Id.* (citations, internal quotation marks omitted).

A preliminary injunction "should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Lopez* v. *Brewer,* 680 F.3d 1068,

20

1072 (9th Cir. 2012) (citations omitted, emphasis in original).  A request for a

mandatory injunction seeking relief well beyond the status quo is disfavored and

shall not be granted unless the facts and law clearly favor the moving party.

*Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319–20 (9th Cir. 1994).

        Mr. Ellison has not provided sufficient evidence to demonstrate that he is

likely to succeed on the merits of his claims or that he is likely to suffer irreparable

harm.  He seeks an order requiring Defendants to cease further threats and false

disciplinary actions/sanctions and to prohibit his transfer to another facility.  He

also seeks to have Defendant Daniels moved to a separate unit.

        Mr. Ellison failed to state a due process claim and has not shown how the

prior incidents of interference with his mail are likely to reoccur.  Even though he

has set forth sufficient facts to state a retaliation claim, on this record, the Court

will not interfere with the day-to-day operations of the prison including the

disciplinary process, housing and staffing issues.  *Wright v. Rushen*, 642 F.2d

1129, 1132 (9th Cir. 1981) (courts should "avoid enmeshing themselves in the

minutiae of prison operations").  Mr. Ellison has not set forth sufficient facts to

suggest that he will suffer irreparable harm.  The motions for injunctive relief

should be denied.

**IV.  MOTION TO ADD ADDITIONAL PLAINTIFFS**

The Court will deny Mr. Ellison's Motion to Add Plaintiffs.  Courts disagree as to whether it is permissible for multiple pro se prisoner-plaintiffs to join their claims together in one action or whether each plaintiff must pursue a separate action.  The Ninth Circuit has not addressed the issue.  The Third and Seventh Circuits have allowed multiple prisoner-plaintiffs to proceed together under Rule 20 of the Federal Rules of Civil Procedure's permissive joinder rule.  *See Hagan v. Rogers*, 570 F.3d 146, 152–57 (3rd Cir. 2009); *Boriboune v. Berge*, 391 F.3d 852, 856 (7th Cir. 2004).  The Eleventh Circuit in *Hubbard v. Haley*, 262 F.3d 1194, 1197–98 (11th Cir. 2001), however, precluded multiple-prisoner plaintiffs from proceeding under Rule 20.  *See Hubbard*, 262 F.3d at 1198.

Finding the reasoning of the *Hubbard* case more persuasive, it has been the practice in this District to not allow multiple pro se prisoner-plaintiffs to proceed together in a single action.  *See, e.g.,* United States Magistrate Judge Carolyn Ostby's Orders in *Brown v. Schweitzer, et al.*, CV-05-28-H-DWM-CSO (D.Mont. June 9, 2005); *Swenson v. MacDonald*, No. CV 05-93-GF-SEH-CSO (D. Mont. Jan. 30, 2006); and the undersigned's Order in *Worm v. Berkebile, et al.*, No. CV 15-00031-GF-BMM-JTJ (D. Mont. June 16, 2015) and *Allison v. Parole Board Director, et al.*, No. CV 17-00006-H-DMM-JTJ (D. Mont. December 12, 2016).

There are several reasons for this practice.  First, 28 U.S.C. § 1915(b)(3)

22

provides that "[i]n no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action."  The Court in *Hubbard* reasoned that the permissive joinder rule in Rule 20 of the Federal Rules of Civil Procedure "actually conflicts" with the PLRA's requirement that prisoner-plaintiffs pay the full filing fee.  The court concluded that, in the context of prisoner cases, the latter-enacted statute, 28 U.S.C. § 1915(b)(1), repeals the earlier-enacted rule.  Consequently, the Eleventh Circuit precluded multiple prisoner-plaintiffs from proceeding under Rule 20.  *See Hubbard*, 262 F.3d at 1198; *c.f. Hagan*, 570 F.3d at 155 (having each joined IFP litigant to pay a full filing fee by installment harmonizes the PLRA with Rule 20 and § 1915(b)).

Despite the contrary authority in *Hagan*, this Court believes that *Hubbard* presents the stronger argument.  Rule 20 is a permissive rule–plaintiffs may join their claims in one action–while the financial scheme of the PLRA is mandatory in nature.  Prisoner-plaintiffs must pay the full filing fee, even if they are granted leave to proceed in forma pauperis, but each prisoner-plaintiff in a multiple-plaintiff action cannot be made to do so without running afoul of § 1915(b)(3)'s imperative that the amount of the fee collected must not exceed the fee imposed for "commencement of a civil action."  If multiple prisoner-plaintiffs proceed together in one action and each pays the full filing fee, the amount of the

fees collected in that action will exceed the amount permitted by statute for the commencement of a civil action.  If each plaintiff is required to pursue their case alone, the amount of the fees collected in each action will never exceed the amount permitted by statute for the commencement of a civil action.

The second reason for not allowing multiple pro se prisoners to proceed together in one action is based upon Rule 11 of the Federal Rules of Civil Procedure which provides:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  A prisoner litigating on his own behalf takes the risk that one or more of his claims may be deemed sanctionable under Fed.R.Civ.P. 11.  A

24

prisoner litigating jointly under Rule 20 takes those risks for all claims in the

complaint, whether or not they concern him personally.  Rule 11 requires all

unrepresented plaintiffs to sign the complaint, and the signature conveys all the

representations specified by Rule 11(b) for the entire complaint.  Yet, a pro se

litigant has no authority to make assertions on behalf of anyone else; only an

attorney may do that.  To suggest that a pro se prisoner-plaintiff can be penalized

under Rule 11 for, say, inaccurate factual statements made by another

prisoner-plaintiff is to suggest that each plaintiff acts for the others in some way.

A Rule 11 sanction would be inappropriate if assessed against a pro se

prisoner-plaintiff who could not conduct a reasonable investigation into the truth of

a co-plaintiff's allegations.  Generally the only investigation a prisoner could

conceivably accomplish is questioning co-plaintiffs regarding what happened.

Prisoners do not have unencumbered opportunities to question witnesses, who are

most frequently officers or staff with considerable authority over the investigating

plaintiff.  It would be unduly harsh to sanction one prisoner if another prisoner

inaccurately states the basis of his claims.

Third, there is a concern regarding the issuance of strikes pursuant to 28

U.S.C. § 1915(g).  This statute limits to three the number of complaints or appeals

filed in forma pauperis that were "dismissed on the grounds that it is frivolous,

25

malicious, or fails to state a claim upon which relief may be granted" (the so called "three strikes rule").  This language refers to the complaint or appeal as a whole; thus when a complaint or appeal is found to be "frivolous, malicious, or fails to state a claim upon which relief may be granted," all plaintiffs would incur strikes. The statute does not impose strikes on a per-claim basis but on a per-case basis. *See* 28 U.S.C. § 1915(g) (requiring district court to impose a strike when an "action" is frivolous, malicious, or fails to state a claim).  Consequently, if all pro se prisoner-plaintiffs in joint litigation are deemed to act as one, Rule 20 actually limits a frivolous claimant's exposure under § 1915(g) if his claims are joined with others that may be meritorious.  A pro se prisoner-plaintiff litigating alone receives a strike if he earns it; the same plaintiff litigating jointly might avoid a strike because someone else did not earn it.

Fourth, there are a number of practical difficulties of joint litigation among pro se plaintiffs.  Inmates litigating together have no guarantee that they will all remain at the same prison or in the same area of a prison during the course of the lawsuit.  In addition, pro se prisoner-plaintiffs in a multiple-plaintiff case would be required to serve every other pro se prisoner-plaintiff as well as any defendants with every document filed.  Fed. R. Civ. P. 5.  Finally, every time a document needed to be filed it would need to be circulated among all plaintiffs for signing.

26

Neither the Court nor any litigant would have any way of knowing whether a later signing plaintiff altered the document in some way.

Mr. Gray and Mr. Cleary are free to file their own actions raising their own individual claims but they may not proceed in this action with Mr. Ellison.  The Clerk of Court will be directed to serve a copy of this Order on Messrs. Gray and Cleary and provide them with the appropriate forms for filing a civil lawsuit

## V.  MOTION FOR APPOINTMENT OF COUNSEL

Mr. Ellison also filed a second motion to appoint counsel.  (Doc. 7.)  His first motion was denied by Order dated May 22, 2017.  (Doc. 5.)  No one, including incarcerated prisoners, has a constitutional right to be represented by appointed counsel when they bring a civil lawsuit under 42 U.S.C. § 1983.  *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *withdrawn on other grounds*, 154 F.3d 952, 962 (9th Cir. 1998).  Unlike criminal cases, a judge cannot order a lawyer to represent a plaintiff in a § 1983 lawsuit–a judge can merely request a lawyer to do so.  *Mallard v. United States Dist. Court*, 490 U.S. 296, 310 (1989); 28 U.S.C. § 1915(e)(1).  Further, a judge may only request counsel for an indigent plaintiff under "exceptional circumstances."  28 U.S.C. § 1915(e)(1); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

A finding of exceptional circumstances requires an evaluation of both

27

> 'the likelihood of success on the merits and the ability of the petitioner
> to articulate his claims pro se in light of the complexity of the legal
> issues involved.' Neither of these factors is dispositive and both must
> be viewed together before reaching a decision.

*Terrell*, 935 F.2d at 1017 (citing *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (citations omitted).

Mr. Ellison asks for the appointment of counsel in conjunction with his request to add two new plaintiffs. As the Court has denied the request to add new plaintiffs, it will also deny the motion for appointment of counsel.

Mr. Ellison has demonstrated his ability to litigate this matter without counsel and he has not yet shown a likelihood of success on the merits. The motion to appoint counsel will be denied.

## VI. CONCLUSION

The Court has considered whether Mr. Ellison's Complaint is frivolous, malicious, fail to state a claim, or seek solely monetary relief from a defendant who is immune. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b). Mr. Ellison's First and Sixth Amendment claims regarding the handling of his legal mail are sufficient to state a claim against Defendant Daniels. His First Amendment retaliation claims are sufficient to state a claim against Defendants Bostwick, Daniels, and Ivie. These Defendants will be required to respond to these claims.

28

Mr. Ellison's due process allegations are insufficient to state a claim and should be dismissed.  As such, his allegations against Defendants Kirkegard, Fletcher, Salmonsen, Wilson, Wood, Beeson, Reich, Strutzel, Wendy Zuber, Captain Zuber, and John Does are insufficient to state a claim and these defendants should be dismissed.

Based upon the foregoing, the Court issues the following:

## ORDER

1.  Mr. Ellison's "Supplemental Complaint to Add Additional Plaintiffs" as construed as a motion for leave to amend his complaint (Doc. 7) is DENIED.  The Clerk of Court is directed to serve a copy of this Order on Messrs. Gray and Cleary and provide them with the appropriate forms for filing their own civil lawsuit and a motion for leave to proceed in forma pauperis.

2.  Mr. Ellison's Second Motion to Appoint Counsel (Doc. 7) is DENIED.

3.  Defendant Daniels must respond to Mr. Ellison's First and Sixth Amendment claims regarding the handling of his legal mail.  Defendants Bostwick, Daniels, and Ivie must respond to Mr. Ellison's retaliation claims.[1]  Pursuant to

---

[1]Defendants are not required to respond Mr. Ellison's due process claims and Defendants Kirkegard, Fletcher, Salmonsen, Wilson, Wood, Beeson, Reich, Strutzel, Wendy Zuber, Captain Zuber, and John Does are not required to file a responsive pleading.

29

Fed. R. Civ. P. 4(d), the Court will request Defendants Bostwick, Daniels, and Ivie

to waive service of summons of Mr. Ellison's Complaint (Doc. 2) by executing, or

having counsel execute, the Waiver of Service of Summons.  The Waivers must be

returned to the Court within **thirty (30) days of the entry date of this Order as**

**reflected on the Notice of Electronic Filing**.  If Defendants Bostwick, Daniels,

and Ivie choose to return the Waiver of Service of Summons, their answer or

appropriate motion will be due within **60 days of the entry date of this Order as**

**reflected on the Notice of Electronic Filing**, pursuant to Fed. R. Civ. P.

12(a)(1)(B).  *See also* 42 U.S.C. § 1997e(g)(2).

4.  The Clerk of Court shall e-mail the following documents to Legal

Counsel for the Montana Department of Corrections:

* Complaint (Doc. 2);
* Motion to Supplement Complaint (Doc. 7);
* Motion for Temporary Restraining Order (Doc. 8);
* this Order;
* a Notice of Lawsuit & Request to Waive Service of Summons; and
* a Waiver of Service of Summons.

Counsel for the Montana Department of Corrections will not be served with

a hard copy of these documents.

5.  Any party's request that the Court grant relief, make a ruling, or take an

action of any kind must be made in the form of a motion, with an appropriate

30

caption designating the name of the motion, served on all parties to the litigation, pursuant to Federal Rules of Civil Procedure 7, 10, and 11.  If a party wishes to give the Court information, such information must be presented in the form of a notice.  The Court will not consider requests made or information presented in letter form.

6.  Mr. Ellison <u>shall not</u> make any motion for default until at least seventy (70) days after the date of this Order.

7.  Pursuant to Local 26.1(d) "no party may begin discovery until a scheduling order has been issued."

8.  At all times during the pendency of this action, Mr. Ellison must immediately advise the Court and opposing counsel of any change of address and its effective date.  Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Further, the Court issues the following:

## RECOMMENDATIONS

1.  Mr. Ellison's motions for injunctive relief as contained in his Complaint (Doc. 2) and his Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 8) should be DENIED.

2.  Mr. Ellison's due process claims should be DISMISSED.

31

3.  Defendants Kirkegard, Fletcher, Salmonsen, Wilson, Wood, Beeson, Reich, Strutzel, Wendy Zuber, Captain Zuber, and John Does should be DISMISSED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Ellison may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[2]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 21st day of June 2017.


/s/ John Johnston
John Johnston
United States Magistrate

---

[2]As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d).  Therefore, three (3) days are added after the period would otherwise expire.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| LIONEL SCOTT ELLISON, | CV 17-00045-H-DLC-JTJ |
| Plaintiff, | |
| vs. | Rule 4 Notice of a Lawsuit and Request to Waive Service of Summons |
| STATE OF MONTANA WARDENS, et al., | |
| Defendants. | |

TO:   Legal Counsel for the Montana
      Department of Corrections
      P.O. Box 201301
      Helena, MT 59620-1301

A lawsuit has been filed against individuals you may represent in this Court

under the number shown above.  A copy of the Complaint (Doc. 2) is attached.

This is not a summons or an official notice from the court.  It is a request that,

to avoid the cost of service by the U.S. Marshals Service, you waive formal service

of a summons by signing and returning the enclosed waiver.  To avoid these

expenses, you must file the signed waiver within 30 days from the date shown

below, which is the date this notice was sent.

If you file the signed waiver, the action will then proceed as if Defendants

Bostwick, Daniels, and Ivie were served on the date the waiver is filed, but no

1

summons will be served on Defendants Bostwick, Daniels, and Ivie and these Defendants will have 60 days from the date this notice is sent (see the date below) to answer the Complaint (Doc. 2).

If you do not return the signed waiver within the time indicated, the Court will order the U.S. Marshals Service to serve the summons and Complaint (Doc. 2) on Defendants Bostwick, Daniels, and Ivie and may impose the full costs of such service.

Please read the statement below about the duty to avoid unnecessary expenses.

DATED this 21st day of June 2017.

    /s/ John Johnston
John Johnston
United States Magistrate Judge

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint.  A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for

2

the failure.

"Good cause" does not include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.  By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| LIONEL SCOTT ELLISON, | CV 17-00045-H-DLC-JTJ |
| Plaintiff, | |
| vs. | Rule 4 Waiver of Service of Summons |
| STATE OF MONTANA WARDENS, et al., | |
| Defendants. | |

TO:   The U.S. District Court for the District of Montana

The following Defendants acknowledge receipt of your request to waive service of summons in this case.  Defendants also received a copy of the Complaint (Doc. 2).  I am authorized by the following Defendants to agree to save the cost of service of a summons and an additional copy of the Complaint in this action by not requiring that the following individuals be served with judicial process in the case provided by Fed.R.Civ.P. 4:

_____;  _____;

_____;  _____;

The above-named Defendants understand that they will keep all defenses or objections to the lawsuit, the Court's jurisdiction, and the venue of the action, but

1

waive any objections to the absence of a summons or of service.

Defendants also understand that they must file and serve an answer or a motion under Rule 12 within 60 days from the date when the Request for Waiver of Service of Summons was filed and if they fail to so default judgment will be entered against them.


Date: _____


_____
(Signature of the attorney
or unrepresented party)


_____
(Printed name)


_____
(Address)


_____
(E-mail address)


_____
(Telephone number)

2